RECEIVED
IN ALEXANDRIA, LA.

JUL - 8 2014

TONY R. MOORE, CLERK
BY_____
            DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| JENNIFER LOUVIERE | : | DOCKET NO. 3:12-2746 |
| VS. | : | JUDGE TRIMBLE |
| WAL-MART LOUISIANA, LLC AND WAL-MART STORES, INC. | : | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #51) filed by defendants, Wal-Mart Stores, Inc. and Wal-Mart Louisiana, LLC (collectively referred to as "Wal-Mart") wherein the movers seek to be dismissed from this lawsuit pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Jennifer Louviere opposes the motion. For the following reasons the motion will be granted in part and denied in part.

## FACTUAL STATEMENT

On August 29, 2011, Ms. Louviere was shopping in the Wal-Mart located in Ruston, Louisiana when she slipped and fell on a clear substance which she believed was water dripping from the ceiling. Ms. Louviere was not aware of how long the water had been on the floor and she did not see any buggy tracks or footprints in the puddle of water.

Louviere alleges that Wal-Mart was negligent in (1) failing to properly inspect the area where the accident occurred, (2) failing to properly maintain and inspect and clean said premises, (3) failing to warn of this unreasonably dangerous condition, (4) failing to maintain, inspect and repair the ceiling/roof, and failing to warn plaintiff and customers of same, and (5) failing to use reasonable

and prudent care under the circumstances and any other acts of negligence which may be revealed between now and the time of the trial. In her Second Supplemental and Amending Petition, plaintiff also alleges strict liability and *res ipsa loquitur.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[2]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[5] The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material

---

[1]  Fed. R.Civ. P. 56(c).

[2]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[3]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[4]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[5]  Anderson, 477 U.S.  at 249.

fact or law.[6]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

## LAW AND ANALYSIS

Wal-Mart maintains that plaintiff cannot establish (1) the existence of a dangerous condition, or (2) that Wal-Mart either created the condition or had actual or constructive notice of the condition which caused the damage prior to its occurrence.  Wal-Mart further maintains that strict liability does not apply in this case because Louisiana Revised Statute 9:2800.6 serves as the sole basis of plaintiff's claims, and plaintiff cannot meet her burden to establish a claim under *res ipsa loquitur.*

Louisiana Revised Statute 9:2800.6 provides as follows:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition

---

[6]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[7]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[8]  Anderson, 477 U.S. at 249-50.

3

which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

Constructive notice is defined as "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition."[9]   The jurisprudence provides that a claimant must make a positive showing that the condition existed for some time before the fall such that it would have been discovered by defendant in the exercise of reasonable care.[10]

In the instant motion, Wal-Mart maintains that Louviere cannot establish Wal-Mart either created, or had notice of the condition of the floor giving rise to her fall.  Wal-Mart relies on Louviere's deposition testimony wherein she testified that she did not know how long water had been dripping from the ceiling or on the floor, nor was she aware of any Wal-Mart personnel who was aware of the substance on the floor prior to her fall. Louviere testified that she did not see any buggy tracks or footprints through the substance.

Wal-Mart further relies on the deposition testimony of Ms. Sherry Thomas, Louviere's aunt who accompanied Louviere to Wal-Mart during the time the alleged fall took place. Thomas also saw the water on the floor, but did not see any footprints or buggy tracks through the substance.

---

[9] Id.

[10]  White v. Wal-Mart Stores, Inc., 699 So.2d 1081, 1084 (La. 9/9/97); Kennedy v. Wal-Mart Stores, Inc. 733 So.2d 1188, 1190 (La. 04/13/99); Howard v. Family Dollar Store #5006, 914 So.2d 118, 121 (La.App. 2 Cir. 10/26/05).

Thomas was also unaware if anyone from Wal-Mart knew the substance was on the floor prior to Louviere's fall, and she could not say how long the substance was on the floor.

Wal-Mart has submitted the deposition testimony of Chantel Coleman, a Wal-Mart assistant manager, who was the first employee to arrive on the scene. Coleman testified that she was not aware of any leaks from the air conditioner or ceiling prior to the accident. She further testified that she did not know how the water got on the floor, nor did she see any buggy tracks through the water, and she was unaware of how long the water had been on the floor.

Wal-Mart presents the deposition testimony of Customer Service Manager, Andrea Kirkham, to whom Louviere reported the accident. Kirkham did not visit the accident scene and was unaware of any dripping or leaking from the ceiling of the store. Dennis Akin, the Wal-Mart maintenance employee testified that he was unaware of a problem of leaks in the ceiling over the area where the incident occurred on that particular day. Wal-Mart also presented the testimony of several other of its employees (Angela Mamon, Samantha Patterson and Johnny Richardson) who all testified that they were not aware of any leaking problems from the ceiling over the area where the incident occurred.

Wal-Mart has submitted the deposition testimony of Bennet Krueger, Wal-mart's District Technician for heating, ventilation and air conditioning repairs. Krueger testified that he did not know from what source the water came from on the date of the accident, and he was not aware of any roof leaks in the store during the time the accident occurred.

Finally, Wal-Mart relies on the expert report and testimony of plaintiff's expert, Dr. Frank Willis. In his initial report, Dr. Willis concluded that he was unable to determine the source of the water that caused the accident, and that it could have come from a variety of sources. Dr. Willis

5

supplemented his report changing his opinion which will be discussed hereinafter. Wal-Mart argues that summary judgment is appropriate because plaintiff cannot establish that Wal-Mart either created the condition on the floor, had actual notice of its existence, or that it was there for such a period of time that Wal-Mart should have known about it.  Wal-Mart relies on Gray v. Wal-Mart Louisiana, LLC,[11] wherein the court found that claims of other known leaks in the roof of the store was not enough to establish causation or notice to defeat a motion for summary judgment under Louisiana Revised Statute 9:2800.6.[12]

Wal-Mart further argues that Dr. Willis' expert opinion that the water could have come from any number of sources does not provide support to show that defendants had constructive notice of the water on the floor prior to plaintiff's fall.

Louviere maintains that not only did Wal-Mart create the condition(s) that caused the water leak which caused the accident, but that they were on notice of the leaks, yet failed to take any preventative measures. Louviere testified that the water was dripping from the ceiling;[13] Thomas testified that there was water dripping from the ceiling.[14] Louviere submits photographs where the accident occurred which reveals a large amount of water on the floor with a bucket placed there to

---

[11] 484 Fed.Appx. 963, 965-66 (5th Cir. 2012).

[12] See also Roberts v. Hartford Fire Ins. Co., 926 So.2d 121,127 (La.App. 3 Cir. 4/5/06); see also Bearb v. Wal-Mart Louisiana, LLC, 2012 WL 6651995, * 1-2 (W.D. La. 2012)(speculation that the merchant's employees should have known of the danger, without any additional evidence of the condition's existence for some period of time is insufficient).

[13] Louviere exhibit B, pp. 24-39.

[14] Louviere exhibit D, pp. 11-19.

catch the water dripping from the ceiling.[15]

Louviere submits the deposition testimony of Chantel Coleman who testified that water was dripping from above the store onto the ground,[16] and that buckets were placed on the floor to catch the water after the accident occurred.[17] Coleman further testified of a history of leaks from the ceiling and the measures taken to protect customers.[18]

Louviere also relies on the deposition testimony of various other Wal-mart employees who testified that the store had a ceiling leak history as follows:

Dennis Akin - this Wal-mart store had a ceiling leak history, the source of which was either the roof, ceiling or air conditioning ducts.  Buckets were placed to catch the water; dripping would sometimes last for hours.[19]

Johnny Richardson - tire service manager testified of a history of ceiling leaks or dripping in an area not involved in this accident.[20]

Andrea Kirkham - Louviere notified Kirkham of accident.[21]

Chantel Coleman - assistant manager testified of history of ceiling leaks from air conditioner

---

[15] Exhibits 2, 3, 4, 5, 6 attached to Louviere exhibit B-1 in globo.

[16] Louviere exhibit C, pp. 6-23, and C-1, accident report and statement, in globo.

[17] Id.

[18] Id.

[19] Louviere exhibit E, pp. 3-16.

[20] Louviere exhibit F, pp. 4-5.

[21] Louviere exhibit G, pp 1-15.

HVAC tubes that hang from ceiling;[22]

Ben Krueger - testified that he and Wal-Mart had a duty to repair, maintain and inspect the A/C system and rack house/refrigeration system, including the HVAC, the HVAC tubes/ducts, rack house, coils and refrigeration and cooler system.  Krueger testified that the 30 air conditioning units which either sit on the roof or hang from the ceiling emit moisture and can leak in the store if the drain lines are clogged, but he was unaware of any manufacturing defects.[23]  Krueger further testified that the rack house on the roof can cause dripping.[24]  Krueger testified that he only responds to problems but does not have a written or specific maintenance schedule.[25]  Louviere provides numerous work/repair orders wherein leaks were found which were caused by dripping from condensation from HVAC lines.[26]

Louviere relies on these various repair orders and the employee's testimony to create a genuine issue of material fact for trial to establish that Wal-Mart caused the water spill on the floor and also had constructive notice of the leaks.

Asa Swetnam - former owner and current employee of Clifford Lee and Associates, the repair and maintenance contractor for commercial roofing at this particular Wal-Mart store.  Swetnam provided documentation from years 2009 through 2011.  Swetnam's testimony and the documents

---

[22] Louviere exhibit C, Louviere dep. pp. 27-31.

[23] Louviere exhibit H, Krueger depo. pp. 1-53, 65-67

[24] Id., pp. 34-37.

[25] Id., pp. 61-62.

[26] Id. pp. 90, 91, 94, 95, 97, 98,103-109, 116, 117, 119, 120, 192, 196, 197.

reveal that the store had received a new roof in 2010.[27] The rack house located above the seafood, meat and dairy departments, which are side by side and close in proximity had a history of leaks. [28] Clifford Lee and Associates had notified Wal-Mart on a number of occasions that this rack house was the cause of the leaks and not the roof.[29] Specifically, Swetnam testified that two months before the accident, or on June 21, 2011, an inspection revealed  a leak found in the seafood area (located near the meat department); the drip pans inside the rack house were rusted and it was recommended that they be seen by HVAC technicians.[30]Another repair order shows a leak on February 10, 2011 in the same rack house.[31]

Swetnam explained that the cause of the leaks was from uninsulated cooling system pipes that condensate which allows water to travel down the pipes and leak at different locations in the store.[32] The June 2, 2012 inspection revealed that the drip pans inside the rack house were rusted with water overflowing them.[33] Swetnam reviewed photographs taken of the HVAC piping taken on February 7, 2012 and explained that the pictures showed broken insulation with condensate forming on the uninsulated part of the pipe and how the water traveled down and ran inside the

---

[27] Louviere exhibit I, Swetnam depo., p. 11-12. R. #54-20.

[28] Id., pp. 42-45.

[29] Id., p. 14.

[30] Id. p. 45.

[31]  Louviere exhibit I-2. Swetnam depo. pp. 33-36;( a follow up trip showed leaks over the seafood were caused by frozen pipes).

[32]  Id., pp. 39-45.

[33]  Id.

9

building.[34] The HVAC piping was directly above the area where the accident occurred. Several photographs revealed frozen and condensated lines.[35]

Dr. Frank Willis - Dr. Willis opined that the roof was not the cause of the leaks, but that he observed substantial leakage on the wall that was "yellow looking" underneath the rack house.[36] In his supplemental report, Dr. Willis opines that the leak that caused plaintiff's accident was from the rack house and/or HVAC Air conditioning tubes.[37] Dr. Willis also testified that due to the condition and water stains, there was a long standing pattern of leakages with regard to the pipe rack.[38]

After a review of the summary judgment evidence presented by the parties, the court finds that there are a genuine issues of material fact for trial as to whether or not Wal-Mart created the hazardous condition that caused the alleged incident, and/or whether or not Wal-Mart had constructive notice of the hazardous condition that caused Louviere's alleged accident.

*Res Ipsa Loquitur*

Wal-Mart maintains that the doctrine of *res ipsa loquitur* does not apply because plaintiff cannot meet the specific criteria: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the

---

[34] Id., pp. 51-53.

[35] Louviere exhibit I-2.

[36] Louviere exhibit J, Louviere depo. p. 29.

[37] Louviere exhibit J-3, Supplemental Report of Frank Willis.

[38] Louviere exhibit J, Louviere depo. p. 69.

plaintiff.[39]

Wal-Mart argues that Louviere has provided no evidence to sufficiently eliminate other more probable causes of the accident, namely that a third party's conduct caused Louviere's injuries. In other words, since Louviere has not eliminated the possibility that a third party caused or placed the substance on the floor, *res ipsa loquitur* does not apply.

Louviere has failed to address this argument in her opposition.  We agree that this doctrine does not apply.  Even though we have found that there is a genuine issue of material fact for trial as to the cause of the accident, Louviere has not addressed and/or submitted summary judgment evidence to eliminate other probable causes of the injury such as that of a third party.  As noted by the court in Linnear, *res ipsa loquitur* must be applied sparingly and only when "the circumstances surrounding an accident are so unusual," it gives rise to an inference of negligence.[40]

*La. Rev. Stat. art. 9:2800.6*

Wal-Mart maintains that Louviere's claims lie solely under Louisiana Revised Statute 9:2800.6 citing Roberts v. Hartford Fire Ins. Co.,[41] wherein the court held that "where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character."[42]   Hence, since La. R.S. 2800.6 deals specifically with a negligence claim against a merchant, it must be applied and the application of any other law would

------

[39]  Linnear v. Centerpoint Energy Entex/Reliant Energy, 966 So.2d 36, 44 (La. 09/05/07).

[40] Id.

[41] 926 So.2d 121, 122 (La. App. 3d Cir. 2006).

[42]  Filson v. Windor Court Hoel, 907 So.2d 723, 726 (La. 06/29/05).

be error.[43] Accordingly, Louviere's claims under Louisiana Civil Code articles 2317.1 and 2322 will be dismissed.

**CONCLUSION**

For the reasons set forth above, the motion for summary judgment will be granted in part and dismissed in part.  The motion will be granted to the extent plaintiff's claims under the doctrine of *res ipsa loquitur*, Louisiana Civil Code articles 2317.1 and 2322 will be dismissed; otherwise motion for summary judgment will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this ___ day of July, 2014.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[43]  See also Willis v. Dolgencorp LLC, 2013 WL 6205133, *9-10 (W.D. La. 2013).